IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LANCE LEFLEVER FUGATE | § | |
| v. | § | CIVIL ACTION NO. 6:21cv444 |
| | | (Crim. No. 6:20cr8-1) |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Movant Lance Fugate, proceeding *pro se*, filed this motion to vacate or correct his federal sentence under 28 U.S.C. §2255. The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

In June of 2019, an agent with the Bureau of Alcohol, Tobacco, and Firearms notified the Drug Enforcement Administration that credible information had been received that Movant was involved in trafficking methamphetamine and firearms in the Wood County area. On June 26, 2019, a confidential informant went to Movant's house and purchased 26.42 grams of a controlled substance known as "ice" [a mixture or substance containing d-methamphetamine hydrochloride of at least 80 percent purity] and a .22 caliber revolver. The informant reported that there was additional methamphetamine in Movant's house as well as two firearms hanging on the wall. The informant and Movant discussed a future purchase of a quarter pound of methamphetamine in the future. Additional purchases of drugs or firearms from Movant were made by confidential informants on July 1 and July 22, 2019.

On July 24, 2019, a search warrant was obtained for Movant's residence. The following day, a confidential informant contacted Movant and arranged to meet at a gas station near Movant's

residence. When Movant arrived, he was detained without incident and the search warrant was executed, turning up 55.10 grams of "ice" and 25 firearms.

Movant was indicted on January 15, 2020. Another search warrant was executed on January 21, 2020. A total of 294.53 grams of "ice" was purchased or seized from Movant, two firearms were purchased, and another 25 were seized.

On February 21, 2020, Assistant U.S. Attorney Lucas Machicek filed a notice stating that Movant and the Government had entered into a plea agreement. On March 5, 2020, Movant pleaded to Counts Two and Six of the indictment, these being possession with intent to distribute and distribution of methamphetamine and use, carrying, and possession of a firearm during and in furtherance of a drug trafficking crime. A sentencing hearing was held on December 8, 2020, at which Movant was sentenced to 102 months in prison on Count Two and 60 months on Count Six, to be served consecutively, followed by a period of five years' supervised release. A special assessment of $200.00 was also imposed. Movant did not take a direct appeal, but filed this motion to vacate or correct sentence under 28 U.S.C. §2255.

## II. The Motion to Vacate

In his motion to vacate, Movant asserts that: (1) counsel was ineffective in inducing and obtaining a guilty plea which was made involuntarily and without understanding of the nature of the charge and the consequences of the plea; (2) the conviction was obtained through the use of a coerced confession; and (3) he received ineffective assistance of counsel from his attorney, Thad Davidson. The Government has filed an answer arguing that Movant's first and second grounds for relief are barred because they could have been raised on direct appeal but were not and that all of his grounds for relief are without merit. Movant has filed a reply asserting that counsel's representation of him was "appalling," he could not have raised his grounds on direct appeal because his plea agreement waived direct appeal, and he is entitled to an evidentiary hearing.

**III. The Testimony at the Plea Hearing and Sentencing**

At the change of plea hearing, Movant testified that he was satisfied with counsel's representation of him and that he had received a copy of the indictment. He said that he had fully discussed the indictment and the facts of his case with his attorney, and after these discussions, it was his desire to plead guilty. (Cause no. 6:20cr8, docket no. 8, pp. 6-7).

After Movant waived the reading of the indictment, the Court explained the range of punishment for the offenses with which Movant was charged. (Docket no. 48, pp. 8-9). The U.S. Attorney summarized the plea agreement, including a statement the defendant understands the nature and elements of the crimes to which guilt is admitted and agrees that the factual statement the defendant is signing is true and correct and will be admitted as evidence, and a statement that the defendant acknowledges that his pleas of guilty are freely and voluntarily made and are not the result of force, threat, or promises, other than those contained in the agreement. After the plea agreement was read, Movant testified that those were the terms of his plea agreement with the Government, that there was nothing in the agreement which he did not understand, no one made any other promises to him other than what was in the plea agreement in exchange for his plea, no one had attempted to force him to plead guilty, and that he was pleading guilty because he was in fact guilty. (Docket no. 8, p. 13).

Counsel stated that he had discussed the terms of the plea agreement with Movant, and Movant testified that he was aware that a guideline sentence would be calculated, stating that he had discussed the application of the Sentencing Guidelines with counsel. He stated that he understood that the sentence imposed could be different from any estimates which counsel, the Government, or the Probation Office may have given him. He also stated he understood that the sentence on Count Six, the firearms charge, would result in a term of imprisonment of not less than five years, served consecutively to the other term of imprisonment. (Docket no. 48, pp. 14-16).

Movant testified that he understood that he had the right to plead guilty and go to trial before a jury, where the Government would have to prove his guilt beyond a reasonable doubt. He

acknowledged that he had the right to counsel, to testify on his behalf, not to be compelled to testify if he did not want to, the right to compel witnesses on his behalf, the right to cross-examine witnesses, and the right to a speedy and public trial. Movant testified that he understood he would give up this rights by pleading guilty. (Docket no. 48, pp. 16-17).

After the Court discussed the waiver of appeal provision and Movant acknowledged that he had reserved the right to appeal only a sentence in excess of the statutory maximum or a claim of ineffective assistance of counsel, the Government read the elements of the offenses and asked Movant if he had an opportunity to review the factual basis with counsel, to which Movant stated that he had. Movant agreed that by signing the factual basis, he was making a written judicial confession to all of the elements of the two offenses to which he was pleading guilty. (Docket no. 48. pp. 19-20). Movant also testified to the Court that everything in the factual basis was true and correct, that he had reviewed it with his attorney, he signed it, and that by doing so, he is admitting the charges against him in counts Two and Six of the indictment. He then entered his pleas of guilty to these charges. (Docket no. 48, pp. 20-23).

At the sentencing hearing, at which Movant was represented by Steven Green, Movant stated that he did not receive copies of the indictment, the plea agreement, or the pre-sentence investigation report until after he had pleaded guilty. Green stated that he had provided Plaintiff with a copy of the pre-sentence report the previous Tuesday (i.e. one week before the hearing) and copies of the plea agreement, the indictment, the factual basis, the elements of the offense, and the Government's and Green's sentencing memos the previous Friday. (Docket no. 43, pp. 6-7).

When questioned by the Court, Movant testified that he had an opportunity to review the pre-sentence report, he understood it, and his attorney was able to answer his questions about it. He said that he believed the report adequately covered his background. Green advised the Court that he had discussed the report with Movant and that Movant did not have any objections to it. (Docket no. 43, pp. 3-4).

At the hearing, the Court stated that the advisory guideline range was 120 to 121 months on Count Two and sixty months consecutive on Count Six, for a total of 180 to 181 months. The Government moved for a downward departure, which the Court granted, and Movant received a sentence of 102 months on Count Two and 60 months consecutive on Count Six, for a total of 162 months. (Docket no. 43, pp. 5-6). The Government moved to dismiss Counts 1, 3, 4, 5, and 7 of the indictment, and this motion was granted.

**IV. Discussion of Movant's Claims**

A. Unlawfully Induced Guilty Plea

Movant states that had he been "properly explained and honestly informed" by his attorney, Thad Davidson, he would not have signed the initial plea deal and would have "proceeded to trial, seeking a more favorable plea." He asserts that Davidson "misrepresented or advised Petitioner that there was not another plea forthcoming" and that Davidson falsely reported that "the initial plea deal was for the purpose of demonstrating Fugate's willingness to cooperate in exchange for a favorable sentence." He contends that he later learned this information was incorrect, and says that he was "duped into signing a plea deal without ever understanding the charges or the exposure of the case against him."

In an attached affidavit, Movant says that there were a number of phone calls between himself, his mother, and Davidson discussing the facts of the case and the federal process. He avers that Davidson refused to provide him with any of the discovery and told him that he, Davidson "has very little experience with federal cases."

A month after the indictment, Movant says that Davidson presented him with a plea deal, but that Davidson said he was going to use this to demonstrate Movant's willingness to cooperate with the Government and that Davidson would negotiate a more favorable agreement than was contained in this plea deal. Davidson would not give him a copy of this initial plea deal, saying that a new and more favorable agreement would be forthcoming.

Movant contends that Davidson had him sign the initial plea and told him not to discuss it with his mother. Davidson also told him that there would be no charges on the firearms and his negotiations were to the drugs alone.

Movant states that the plea deal which he signed was "unknowingly binding." When he learned of Davidson's misrepresentation and dishonesty, Movant states he demanded that Davidson withdraw the plea deal. However, he claims that Davidson refused to engage in further plea negotiations, but used the claim of an "initial plea deal" to dupe him into signing. Movant says that Davidson's "dishonest and manipulating coercion which led to Mr. Fugate's signing of what he believed was for the purposes of negotiating a favorable sentence, one that did not include any enhancement including a firearm, was a complete failure of due process."

The Government argues that Movant's claim should have been raised on direct appeal and has been waived because it was not. The Fifth Circuit has explained that issues in a §2255 proceeding which could have been but were not raised on direct appeal are not cognizable on collateral review unless the movant shows cause and prejudice for the procedural default or a fundamental miscarriage of justice. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Pierce*, 959 F.2d 1297, 1300-02 (5th Cir. 1992).

In this regard, attorney error short of constitutionally ineffective assistance of counsel does not constitute "cause" for a procedural default even if this default occurs on appeal rather than at trial; on the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim, while prejudice means that the error complained of, if left uncorrected, would result in a miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995).

A "fundamental miscarriage of justice" refers to the conviction of a person who is actually innocent. *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *United States v. Sorrells*, 145 F.3d 744, 749 n.3 (5th Cir. 1998). A petitioner does not meet the threshold requirement of actual

innocence unless he shows that in light of newly discovered evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), the Supreme Court stated that examples of such "new reliable evidence" include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial. Thus, the actual innocence exception is limited to cases in which the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).

Movant did not claim on direct appeal that his guilty plea was unlawfully induced, but now argues that he was precluded from doing so by the waiver of appeal which was part of his plea agreement. In *United States v. Simmons*, 142 F.3d 1279, 1998 WL 224564 (5th Cir., April 21, 1998) the movant Charles Simmons waived his right to direct appeal but then sought §2255 relief on a number of claims, including an allegation that his plea was involuntary. The Fifth Circuit held that were there no waiver, this claim could have been raised on direct appeal, and that even without the waiver, the issue was barred from §2255 review unless Simmons showed cause and prejudice, which he did not.

Movant's complaint that his plea was not voluntary because he was misled as to the nature of the plea deal he signed could have been raised on direct appeal but was not, and is thus barred absent a showing of cause and prejudice, which Movant has not made. Nor has Movant met the threshold requirement of actual innocence. *See United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999) (where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised in a §2255 motion only if the petitioner can show cause and prejudice or actual innocence).

However, to the extent that Movant asserts an ineffective assistance of counsel claim with regard to the voluntary nature of his plea, such a claim could not have been raised on direct appeal.

*United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008). Consequently, such an ineffective assistance claim has not been procedurally defaulted, and the Court will address it on the merits.

In order to prevail on a claim of ineffective assistance of counsel, a §2255 movant must demonstrate (1) that counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004); *United States v. Bogomol*, slip op. no. 18-11486, 2021 U.S. App. LEXIS 24148, 2021 WL 3620444 (5th Cir., August 13, 2021), *citing Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's actions are reviewed with great deference and a "strong presumption" that counsel has exercised reasonable professional judgment. *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996). The Fifth Circuit uses a "but for" test in determining the second prong of the *Strickland* test, holding that the movant must show a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *United States v. Crain*, 877 F.3d 637, 646 (5th Cir. 2017).

In the context of a guilty plea, this means that the movant must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Shepherd*, 80 F.3d 734, 743 (5th Cir. 2018). Counsel's performance is deficient when counsel's advice "leaves the defendant unable to make an informed and conscious choice to plead guilty." *U.S. v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008). Factors relevant to determining whether a defendant would have gone to trial can include the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments. *United States v. Batamula*, 823 F.3d 237, 240 n.4 (5th Cir. 2016). The movant must substantiate any preference to proceed to trial with contemporaneous evidence, not *post hoc* assertions. *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020); *United States v. Lozano*, 757 F.App'x 348, 2018 U.S. App. LEXIS 35539 (5th Cir. 2018), *citing Lee v. United States*, 137 S.Ct. 1948, 1967 (2017).

Although Movant complains that counsel gave him an "initial plea deal" without telling him that this would be binding, on the promise that a more favorable deal would be negotiated later, his testimony at the plea proceeding demonstrates otherwise. The Supreme Court has stated that solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). As a result, the movant faces the heavy burden of proving that he is entitled to relief. *See Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984).

The critical question is whether the entry of the petitioner's guilty plea was knowing and voluntary; in order to meet his burden of proving he is entitled to relief, the petitioner must overcome the evidence of his own words. *See United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to evidentiary hearing on claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person").

Movant's sworn statements in open court, which are entitled to this strong presumption of verity, contradict his claim that counsel wrongfully induced an involuntary plea. He specifically stated that he understood the agreement, he had discussed it with counsel, no one had promised him anything outside of the agreement, and that he was pleading guilty because he was in fact guilty. Movant has offered nothing to overcome the evidence of his own words, nor has he otherwise shown that but for counsel's actions, he would not have pleaded guilty, but would have insisted on going to trial. His conclusory allegations are insufficient to show that he received constitutionally ineffective counsel or that his plea was involuntarily induced, particularly in light of his testimony at the change of plea proceeding and his agreement to the factual resume. *See, e.g.*, *Martinez v. Dretke*, civil action no. 4:03cv5217, 2005 U.S. Dist. LEXIS 47118, 2005 WL 6451672 (S.D.Tex.,

February 23, 2005) (rejecting as conclusory and unsubstantiated a claim of ineffective assistance of counsel for failing to advise petitioner that there was insufficient evidence to support a conviction). Movant's first ground for relief is without merit.

B. Coerced Confession

In his second ground for relief, Movant contends that his conviction was obtained through a coerced confession resulting from inadequate consultation with his attorney. He complains of "blatant dishonesty and rush to a plea deal" which counsel claimed was "for purposes of demonstrating Movant's willingness to cooperate." He claimed that counsel had him sign the "initial plea deal" but would not give him a copy, and that counsel did not engage in any further plea negotiations. He also asserted that this alleged "initial plea deal" did not include any firearms charges.

The claim that Movant's confession was coerced should have been raised on direct appeal and thus cannot be raised in a §2255 proceeding absent a showing of cause and prejudice or a colorable showing of actual innocence, which Movant has not made. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). In any event, Movant's testimony at the change of plea hearing belies his contentions. He acknowledged that he had read and understood the plea agreement and that the agreement read in court represented the terms of his agreement with the Government. He stated that there was nothing in the agreement he did not understand and that there had been no other promises made to him in exchange for his plea. He testified that everything in the factual basis was true and that by signing it, he was admitting the charges in Counts Two and Six. Movant further testified that he was satisfied with counsel's representation of him.

Movant did not testify at the change of plea hearing that he understood this agreement to be only an initial one or that he had been promised that a more favorable one would be negotiated later. When advised of the penalty range for the firearms offense, he did not state that he had been promised there would be no firearms charges, but on the contrary testified that no promises had been made to him outside of the plea agreement. Movant has offered nothing to suggest that his

confession was coerced nor that this confession otherwise came about through inadequate representation by counsel. *See, e.g.*, *United States v. Nevarez-Martinez*, 235 F.3d 1342, 2000 WL 1673053 (5th Cir., October 19, 2000) (petitioner's allegation that her attorney coerced her may not refute her sworn testimony to the contrary, citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)); *United States v. Mata*, 95 F.3d 47, 1996 WL 405716 (5th Cir., June 27, 1996) (citing *Blackledge* in holding that the petitioner's statements in open court refuted his allegation that counsel coerced his guilty plea). This claim is without merit.

   C. Ineffective Assistance of Counsel

In his third ground for relief, Movant asserts that counsel was ineffective for "his dishonest representation and his failure to inform, explain, and apprise Fugate of the true options and alternatives." (Docket no. 1-1, p. 8). He says that there is no indication in the record that counsel fulfilled the obligations of explaining the elements necessary for the Government to secure a conviction, discussing the evidence as it bears on those elements, and explaining the sentencing exposure faced as a consequence of exercising each of the options available. He contends that counsel failed to advise him of all of the relevant facts of the case, estimate the likely sentence in the event he was convicted at trial, or discuss the likeliness of a successful defense.

Movant argues that had counsel represented the plea deal honestly, explaining and informing Movant of the actual facts, he would have proceeded to trial. However, Movant does not explain what "actual facts" should have been related to him which would have caused him to proceed to trial. He says in a conclusory manner that "Attorney Davidson failed to follow, inquire, research, and investigate numerous potential leads which would have led to exculpatory, impeaching, and materially readily evidence [sic]," and that this evidence would be revealed in pleadings and attachments. The only such evidence or attachment furnished by Movant is a statement by his mother, May Fugate, which is attached to his reply to the Government's answer. This statement says that beginning on February 18, 2020, she was warned by Davidson of "undisclosed evidence" he had

received against Movant. However, Davidson refused to discuss or disclose the indictment or the evidence which was in his possession, although Movant had authorized him to do so.

May Fugate states that Davidson told her that he was going to visit Movant the next day and would show him everything, but he warned her not to discuss the case with anyone, not even Movant.

On February 19, 2020, May Fugate states that she learned from Movant that Davidson had gone to see him, supposedly to go over the indictment, but that Davidson had taken Movant a DVD which he said had a lock placed on it by federal authorities so Movant would not be able to view it.

Two days later, on February 21, 2020, May Fugate states that she talked to Davidson and told him that she wanted to help Movant. She told him that she was discussing Movant's case with family friends, specifically Sheriff Larry Smith of Smith County and Lt. Bill Colbey, who had worked out of Smith County for over twenty years. She states that Davidson told her that he did not go to see Movant to unlock the DVD and that the case had become "complex," and there were death threats against Movant and against May Fugate herself. He warned her not to discuss the case with anyone, particularly law enforcement officers such as Sheriff Smith and Lt. Colbey. She adds that Davidson told her that if Movant did not take the plea deal, the people who had threatened their lives would act immediately and they would be murdered. He also told her not to discuss the death threats with Movant, but that she should convince him to take the plea deal.

May Fugate further says that Davidson refused to provide a copy of the plea agreement prior to or even after Movant reluctantly accepted it. She says he told her that the initial plea deal would be used to obtain a more favorable outcome soon after, and that by quick acceptance of responsibility, Movant would not be charged with the firearms nor would his sentence be enhanced as a result of the firearms.

According to May Fugate, she told Movant everything that Davidson had told her, and Movant was "furious and wanted to withdraw from the deal immediately and proceed to trial."

However, Davidson became impossible to contact. She says that she tried several times to express Movant's desire to withdraw his plea, but was unsuccessful in contacting Davidson.

The change of plea hearing took place on March 5, 2020, some two weeks after May Fugate says that Davidson talked to her, she relayed the conversation to Movant, and Movant became furious and wanted to withdraw from the deal immediately. However, Movant's sworn testimony at the hearing wholly contradicts May Fugate's account of events. As noted above, Movant testified that he had received a copy of the indictment, he fully discussed the charges in the indictment and the facts of the case with counsel, and after such discussion, it was his desire to plead guilty. Movant further testified that he understood the plea deal, with no mention that he had been told it was only an "initial deal" and another would be negotiated later, nor did he testify that he had been promised that he would not be charged with any firearms offenses.

The Fifth Circuit has held that a movant may seek relief on the basis of alleged promises, though inconsistent with representations made in open court when entering a plea, by showing the exact terms of the alleged promise, where, when, and by whom the promise was made, and the identity of any eyewitnesses to the promise. An evidentiary hearing is unnecessary if the movant's showing is inconsistent with the bulk of his conduct or he otherwise fails to meet his burden of proof in the light of other evidence in the record. *Cervantes*, 132 F.3d at 1110, *citing Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).

In *Blanton v. U.S.*, civil action no. 3:12cv5077, 2013 WL 6003453 (N.D.Tex., September 9, 2013), *Report adopted at* 2013 WL 6003482 (N.D.Tex., November 13, 2013), the movant Preston Blanton pleaded guilty without a plea agreement. He signed a factual resume admitting to facts supporting the three counts against him and acknowledging that the maximum sentence for his two offenses of receipt of child pornography and one offense of possession of child pornography carried maximum penalties of 20 years on counts 1 and 2 and ten years on count 3, which could be made to run consecutively.

Blanton also stated that he had discussed the sentencing guidelines with counsel and understood that the court could impose sentence after considering the guidelines and statutory factors, that the guidelines were not binding and he could receive the maximum statutory sentence, and that he had reviewed the case with counsel, received satisfactory explanations, and was satisfied with counsel's representation.

During re-arraignment, Blanton acknowledged all of the rights he was waiving by pleading guilty. He also acknowledged that he should not rely on any statements or promises made by anyone including his attorney because punishment would be decided by the judge. He stated that he had spoken to his attorney about his plea, he was satisfied with his representation and advice, and that he was pleading guilty because he was guilty and not because anyone had promised him anything.

In his §2255 motion, Blanton argued that he had been told that he would receive a sentence between five and 10 years, there was no reason for a longer sentence, and the judge had imposed that sentence or less for worse cases. He furnished a signed affidavit from his mother saying that the movant had told her his attorney said he would not receive more than five to 10 years, and that counsel confirmed to her that he had told Blanton he would receive a sentence of five to 10 years if he pleaded guilty.

The district court observed that solemn declarations in open court carry a strong presumption of verity, citing *Blackledge* and *Fuller*. The court recognized that Blanton could be entitled to a hearing if he presented evidence of the promise through an affidavit from a reliable third party, citing *Cervantes* and *Harmason*, but stated that Blanton failed to meet the criteria because he did not state where and when counsel had told him that there was no reason he should receive a sentence over five to 10 years. The court stated that the affidavit of Blanton's mother did not reflect that she was an eyewitness to any statements made by counsel to Blanton directly, nor did it state where or when counsel had made the promise to Blanton. *See United States v. Merrill*, 340 F.App'x 976 (5tj Cir., August 17, 2009) (the affidavit of a girlfriend did not provide independent indicia of the likely

merit of the claims because it did not state where or when the promise was made and did not indicate that the girlfriend was an eyewitness to any promises made to Merrill).

Movant's sworn testimony at the change of plea hearing directly contradicts the allegations of this affidavit, despite the fact that the change of plea hearing occurred some two weeks after the alleged events which the affidavit recounts. In addition, the affidavit does not reflect that Movant's mother was an eyewitness to any promises made directly to Movant, nor does either Movant or his mother's affidavit state where or when the alleged promises were made or provide the identities of any eyewitnesses to these alleged promises. As in *Blanton* and *Merrill*, the affidavit of Movant's mother is insufficient to overcome the evidence of Movant's own testimony at the change of plea proceeding.

Movant has offered nothing to suggest that counsel's performance was deficient or that any such deficient performance prejudiced the defense. Nor has he demonstrated that but for counsel's alleged ineffectiveness, he would not have pleaded guilty, but would have insisted on going to trial. As noted above, factors relevant to determining whether a defendant would have gone to trial can include the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments. *United States v. Batamula*, 823 at 240 n.4. In this case, the risks faced at trial included statutory sentence ranges of five to 40 years on Count One, 10 years to life on Counts 2, 3, and 4, and five years to life, running consecutively, on Counts 5, 6, and 7. Had Movant proceeded to trial and been convicted, he would not have received credit for acceptance of responsibility, nor is it likely that the Government would have moved as they did for a downward departure. The pre-sentence investigation report states that had Movant proceeded to trial and been convicted on all counts, he would have faced a total punishment of 315 to 348 months in prison. (Docket no. 30, p. 15).

These risks - substantially more significant than the 162-month sentence Movant actually received - weigh against determining that Movant would have gone to trial. His representations about his desire to retract his plea consist of little more than *post hoc* assertions which are

contradicted by his sworn testimony at the change of plea hearing, and the district court carefully admonished him about the rights he would give up by pleading guilty. The district court also questioned him to be sure that his plea of guilty was knowing and voluntary and found that it was. Movant has failed to overcome the strong presumption that counsel exercised reasonable professional judgment and provided effective assistance, nor has he demonstrated that but for counsel's alleged derelictions, he would not have pleaded guilty but would have insisted on going to trial. Movant's claim on this point is without merit.

**V. Conclusion**

28 U.S.C. §2255(a) reads as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. §2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been raised on direct appeal. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). Instead, the statute provides recourse only for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Gobert*, 137 F.3d 315, 318 (5th Cir. 1998); *see United States v. Seyfert*, 37 F.3d 1131, 1134 (5th Cir. 1994) (matters raised and resolved on direct appeal may not be relitigated through a §2255 motion).

Movant has not shown a transgression of his constitutional rights nor raised a question of jurisdictional magnitude. Nor has he shown that he suffered an injury which could not have been raised on direct appeal or which could result in a complete miscarriage of justice. His motion to vacate or correct sentence under 28 U.S.C. §2255 should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a §2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). Rule 11 of the Rules Governing §2255 Proceedings in the United States District Courts provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued only if the movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2).

Under the controlling standard, the movant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), *quoting Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (200).

Movant has not made a substantial showing of the denial of a constitutional right. Nor has he shown that reasonable jurists could debate whether his motion to vacate or correct sentence should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Consequently, he is not entitled to a certificate of appealability.

RECOMMENDATION

It is accordingly recommended that the above-styled motion to vacate or correct sentence be dismissed with prejudice. It is further recommended that a certificate of appealability be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 23rd day of August, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE